IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

**BARBARA FREEMAN,**
    **Plaintiff,**

v.                                          No:  1:06cv216/MP/MD

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
    **Defendant.**

_____

**REPORT AND RECOMMENDATION**

    This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Freeman's application for disability insurance benefits and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Act.

    Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits and SSI benefits claiming onset of disability as of March 1, 2002. The applications were denied initially and on reconsideration and plaintiff requested a hearing before an administrative law judge (ALJ). A hearing was held on January 20, 2006 at which plaintiff was represented by counsel and testified. The ALJ rendered an unfavorable decision on July 15, 2006 (tr. 13-19) and the Appeals Council declined review (tr. 5-7), making the decision of the ALJ the final decision of the Commissioner, and therefore subject to review in this court. *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). This appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that plaintiff had not engaged in substantial gainful activity at any relevant time; that she had severe impairments of diabetes mellitus, hypertension, recurrent pancreatitis, and pancreatic abnormality, depression, anxiety, and alcohol and substance abuse, but that she did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4; that she could perform her past relevant work as a custodial worker; and that she was not disabled as defined in the Act.

## STANDARD OF REVIEW

The ALJ's decision will be reversed only if it is not supported by substantial evidence. *Falge, supra.* The court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether it is premised upon correct legal principles. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). "A determination that is supported by substantial evidence may be

meaningless . . . if it is coupled with or derived from faulty legal principles." *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted). Findings of fact by the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps. A finding of disability or no disability at any step renders further evaluation unnecessary. The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  *Chester v. Bowen*, supra, 792 F.2d at 131; *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, claimant must prove that she cannot perform the work suggested by the Commissioner.  *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

Plaintiff medical history is lengthy and complex, grounded primarily on a long-time history of alcohol and substance abuse resulting in multiple hospitalizations for hepatitis and damage to her pancreas.  She also has diabetes mellitus, hypertension, depression and anxiety, all of which were found by the ALJ to be severe.  In this appeal, plaintiff concentrates on other conditions, specifically post-traumatic stress disorder (PTSD) and panic disorder.  Consequently, the medical history will be limited to those claimed conditions.

There are three entries in the administrative record that refer, to some degree indirectly, to these disorders.  The first was a consultative examination conducted on November 13, 2003 by Andres Nazario, Ph.D., a psychologist.  Dr. Nazario took a complete history from plaintiff, noting that she reported that she had been treated for mental illness in the late 1970s and 1980s, and that hospitalizations during that time were for both substance abuse and depression; that she had panic attacks and stayed at home most of the time; that she drank two six-packs of beer every day and

used crack cocaine every other day; that she cried, and felt anxious and angry all day; that she was molested by her uncle when she was six years old; and that she was not receiving any mental health treatment.  Dr. Nazario noted that plaintiff was cooperative initially but became belligerent; that it was difficult to tell whether she was unable to concentrate or just refused to answer questions; that her speech was blurred and at times difficult to understand; and that she may have been under the influence of drugs.  He then determined that based on the symptoms she described, her presentation, and records reviewed (which were not identified), plaintiff suffered from PTSD, panic disorder, major depression and polysubstance dependence (tr. 272).

The second relevant record entry was made by Lance Chodosh, M.D., a family practitioner.  He saw plaintiff in consultation on December 3, 2003.  During the examination plaintiff did not mention having been abused as a child, nor did she mention a history of drug abuse.  Her physical examination was basically normal, and Dr. Chodosh assessed "chronic mental disorder with aspects of depression, panic disorder, chronic anxiety, and secondary alcohol abuse." (Tr. 297-300).

The third relevant entry was made by an intake nurse practitioner at a family practice clinic on February 11, 2004.  Plaintiff reported being depressed and nervous, and "significant abuse history, which she has addressed at various times in her past." (Tr. 308).  The nurse practitioner's assessment included PTSD and mild major depressive disorder (*id.*).

## DISCUSSION

Plaintiff contends that (1) the ALJ erred in not finding that her PTSD and panic disorder with agoraphobia were severe; that (2) as a consequence the ALJ did not properly consider plaintiff's severe impairments in combination; and that (3) the ALJ therefore erred in finding that plaintiff could perform her past relevant work.

**Plaintiff's first argument fails because there was no error in not finding that PTSD and panic disorder with agoraphobia were severe. Consequently, plaintiff's second and third arguments also fail.**

At step two the ALJ must determine whether the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). The burden at this step is on the claimant. *Chester v. Bowen, supra.* The Commissioner's regulations provide:

> **What we mean by an impairment(s) that is not severe.**
>
> **(a) Non-severe impairment(s).** An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.
>
> **(b) Basic work activities.** When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include–
>
>> **(1)** Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>>
>> **(2)** Capacities for seeing, hearing, and speaking;
>>
>> **(3)** Understanding, carrying out, and remembering simple instructions;
>>
>> **(4)** Use of judgment;
>>
>> **(5)** Responding appropriately to supervision, co-workers and usual work situations;  and
>>
>> **(6)** Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521. The Commissioner has adopted an interpretive ruling that specifically addresses how to determine whether medical impairments are severe. The ruling provides in part:

> As explained in 20 C.F.R. §§ 404.1520, 404.1521, 416.920(c), and 416.921, at the second step of sequential evaluation it must be

determined whether medical evidence establishes an impairment or combination of impairments "of such severity" as to be the basis of a finding of inability to engage in any SGA [substantial gainful activity]. An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at this step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities). Thus, even if an individual were of advanced age, had minimal education, and a limited work experience, an impairment found to be not severe would not prevent him or her from engaging in SGA.

SSR 85-28, 1985 WL 56856.

In *Brady v. Heckler*, 724 F.2d. 914 (11th Cir. 1984) the Eleventh Circuit used the test later adopted in SSR 85-28 to state that a claimant's abnormalities must be of such kind that they would not be expected to interfere with the individual's ability to work. The Eleventh Circuit has further explained that

> [s]tep two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Claimant need show only that her impairment is not so slight and its effect is not so minimal.

*McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). It is not for the reviewing court to say that under these circumstances plaintiff's impairment is or is not trivial, only that the ALJ must properly justify his finding on that issue. And the ALJ's findings must be supported by substantial evidence.

As noted above, the plaintiff's medical record is extensive, but it deals almost exclusively with her drug and alcohol abuse. The ALJ addressed all of plaintiff's complaints in detail. He found that her severe conditions included anxiety and

*Case No: 1:06cv216/MP/MD*

depression, so it cannot be said that he did not consider plaintiff's mental condition. As to plaintiff's argument concerning PTSD, that condition was mentioned only twice in the entire record, once by a nurse practitioner, who is not an acceptable medical source for purposes of disability determinations, 20 C.F.R. §§ 404.1513(a), 416.913(a), and once by a psychologist, Dr. Nazario.  The ALJ did discuss Dr. Nazario's report.  He gave it little weight, however, holding that Dr. Nazario failed to provide appropriate evaluation for the period at issue, and that he based his opinion on a one time mental status examination in which plaintiff appeared reluctant to provide answers to his questions (tr. 18).  Where a physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986).  A brief and conclusory statement that is not supported by medical findings, even if made by a treating physician (which is not the case here), is not persuasive evidence of disability.  *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987); *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980).  Moreover, the opinion of even a treating physician who has seen the plaintiff only once is not entitled to great weight.  *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986).  On this record there is no other consistent evidence to support a PTSD diagnosis. *Wheeler, supra*.  Indeed, the administrative record is entirely silent of any mention of the plaintiff's alleged prior abuse, or possible PTSD, other than in the single reference by Dr. Nazario (and a subsequent oblique mention of "abuse" by the nurse practitioner).  Even in her initial disability report, plaintiff reported only physical, not mental, problems (tr. 53).  It was another three years, not until September 7, 2003, that she mentioned depression and panic attacks in her disability report (tr. 67).  The ALJ did not err in finding that Dr. Nazario's opinion was entitled only to little weight.

The same is true of Dr. Chodosh's opinion regarding plaintiff's mental condition. He saw the plaintiff only once, and mentioned panic disorder but not PTSD. However, his opinion was not based on a complete information as plaintiff failed to disclose her past drug abuse to him, and Dr. Chodosh merely recited plaintiff's claimed history. He is not a mental health professional, and even noted that a separate psychological evaluation was indicated. As was the case with Dr. Nazario, Dr. Chodosh's conclusions were not supported by other consistent evidence, and stated only conclusory opinions.

Since the second part of plaintiff's argument (the ALJ did not properly consider plaintiff's severe impairments in combination) depends on this court finding error on the first, it need not be discussed further. The same can be said for the third (the ALJ erred in finding that plaintiff could perform her past relevant work) except that plaintiff argues in part that there was error even without considering the alleged PTSD and panic disorder. Plaintiff contends that Dr. Nazario's opinion that plaintiff would not likely be able to secure and sustain gainful employment should have been given great weight. This argument fails for two reasons. First, as discussed above, Dr. Nazario's opinion on plaintiff's mental condition was entitled to little weight, and his conclusion that she would be unable to find work was based on that opinion.

The second reason this argument fails is that the opinion by a treating physician that a patient is "unable to work" or is "disabled" is not dispositive for purposes of Social Security claims. The Commissioner's regulations and the interpretations of those regulations clearly provide that an ALJ should give weight to a physician's opinions concerning the nature and severity of a claimant's impairments, but that the ultimate question of whether there is disability or inability to work is reserved to the Commissioner. For instance, Title 20 C.F.R. § 404.1527(e)(1) specifically states that a finding of disability or inability to work by a

medical source does not mean that the Commissioner will automatically reach the same conclusion. See also Title 20 C.F.R. § 416.927(e). Furthermore, the Commissioner "will not give any special significance to the source" of an opinion on issues reserved for the Commissioner. Title 20 C.F.R. § 404.1527(e)(3) and § 416.927(e)(3); *see also* Social Security Ruling 96-5p (whether an individual is disabled is a question reserved to the Commissioner; treating source opinions on such questions are "never entitled to controlling weight or special significance"). Although such opinions on disability are not entitled to controlling weight, they must not be ignored, and the Commissioner must examine the entire record to determine whether such opinions are supported by the record. SSR 96-5p. In *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) the court reversed the ALJ's finding of no disability, in part because the ALJ relied on a treating physician's report that the claimant could no longer work as a longshoreman when this report was ambiguous as to whether the claimant could do *any* work, and the physician subsequently wrote a letter saying the claimant was completely disabled.

To require the Commissioner to accept as controlling a statement that a patient is or is not disabled would require the Commissioner to credit the physician not only with knowledge of the patient's physical or mental condition, but also with an understanding of the nuances of how the regulations analyze physical limitations with respect to job experience, age, education, transferability of skills, the definitions of the various levels of exertion relevant to types of work, and similar matters. Moreover, a physician's opinion on whether a person is able to work may be colored by such things as the physician's knowledge of local hiring practices, whether there are specific job vacancies, a person's reluctance to do a particular kind of work, and similar matters. These things are not properly considered by the Commissioner in determining disability. Title 20 C.F.R. §§ 404.1566, 416.966. For all these reasons, a physician's opinion that his or her patient cannot work or is

disabled is not a conclusive medical opinion for the purpose of Social Security benefits determinations and by itself is not entitled to special significance.

In addition to Dr. Nazario's opinion regarding plaintiff's inability to work, plaintiff points to Mental Residual Capacity Assessment Forms filled out by state agency physicians showing that plaintiff was moderately limited in certain areas - in her ability to carry out detailed instructions, maintain attention and concentration, complete a normal workday and workweek and perform at a consistent pace without an unreasonable number of rest periods, interact appropriately with the public, and set realistic goals or make plans independently of others (tr. 323-324). That is true. However, these are entirely consistent with the restrictions placed on plaintiff by the ALJ - that she could understand and remember simple repetitive tasks in a low stress environment, with little interaction with supervisors, coworkers and the public (tr. 29). Plaintiff's past relevant work as a custodian was consistent with these restrictions.

Plaintiff also argues that her work as a custodian, which required dusting, was inconsistent with the ALJ's determination that plaintiff should avoid concentrated exposure to dust and fumes, but this argument effectively removes the word "concentrated" from the ALJ's finding, something this court will not do.

Plaintiff has failed to show that the ALJ erred in any of his determinations challenged here on appeal. The ALJ's determinations were supported by substantial record evidence, and plaintiff is not entitled to reversal.

Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.

*Case No: 1:06cv216/MP/MD*

At Pensacola, Florida this 31st day of October, 2007.


/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636;** *United States v. Roberts*, **858 F.2d 698, 701 (11th Cir. 1988).**